UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No:  20-CV-61047-CANNON/STRAUSS

PAUL RITCHIE and RAQUEL
RITCHIE,

      Plaintiffs,

v.

MATTHEW A. DOLMAN, *et al*.

      Defendants.

_____/

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

THIS CAUSE is before me upon Defendants' Motion to Dismiss Counts II, III, IV, V, VI, VII and VIII of the Second Amended Complaint and Related Memorandum of Law in Support of Each ("Motion to Dismiss").[1]  (DE 54).  The Honorable Rodolfo A. Ruiz II, United States District Judge, referred this case to me for rulings on all pre-trial, non-dispositive matters and for issuance of a Report and Recommendation on any dispositive matters pursuant to 28 U.S.C. § 636, Federal Rule of Civil Procedure 72, and the Magistrate Rules of the Local Rules of the Southern District of Florida.  (DE 47).  On November 23, 2020, this case was reassigned to District Judge Aileen M. Cannon.  (DE 66).  I have reviewed the Motion, the Response (DE 57), the Reply[2] (DE 61) and the record and am otherwise duly advised in the premises.  For the reasons stated below, I

---

[1] Defendants argue specifically to dismiss Counts 2 through 10 but request in their prayer for relief that the Court enter "an Order Dismissing the Complaint."  (DE 54 at 6, 18).  I proceed by addressing all claims in Counts 1 through 10.

[2] Defendants' Reply is styled: Response to Memorandum of Law in Opposition to Motion to Dismiss Second Amended Complaint.  (DE 61).

respectfully recommend that the Motion to Dismiss be **GRANTED IN PART and DENIED IN PART**.

## I.    BACKGROUND

On May 28, 2020, Plaintiffs Paul Ritchie and Raquel Ritchie filed an eight-count Verified Complaint against Defendants.  (DE 1).  On August 14, 2020, Plaintiff Raquel Ritchie gave notice of voluntary dismissal without prejudice of all her claims.  (DE 25).  On August 20, 2020, pursuant to leave given by the District Court (DE 30), Plaintiff Paul Ritchie ("Plaintiff") filed a Verified Amended Complaint for Damages, Declaratory and Injunctive Relief and Demand for Jury Trial ("Amended Complaint").  (DE 32).  On September 9, 2020, pursuant to leave given by the District Court (DE 46), Plaintiff filed a Verified Second Amended Complaint for Damages, Declaratory and Injunctive Relief and Demand for Jury Trial ("Second Amended Complaint").  (DE 48).  The Second Amended Complaint alleges federal and state causes of action stemming from Defendants' employment of Plaintiff and the termination of that employment.  Specifically, the Second Amended Complaint alleges Wrongful Termination Based on Age Discrimination under 29 U.S.C. § 623(a)(1) (Count 1); Unlawful Retaliation under 29 U.S.C. § 623(d) and 42 U.S.C. § 2000e-3(a) (Count 2); Unlawful Retaliation under Fla. Stat. § 448.102 (Count 3); Fraudulent Misrepresentation under state law (Count 4); Negligent Misrepresentation under state law (Count 5); Promissory Estoppel under state law (Count 6); Statutory Misappropriation of Image under Fla. Stat. § 540.08 (Count 7); Common Law Unauthorized Use of Likeness (Count 8); Common Law Restitution Measured by Quantum Meruit and Unjust Enrichment (Count 9); and Misclassification of Employee under 29 U.S.C. § 201, *et seq.* and Common Law (Count 10).  The Second Amended Complaint alleges each cause of action against each of Defendants, referring to them collectively as "Sibley Dolman" and alleging that they are "related and intertwined through consolidation,

merger and/or common ownership and control and have otherwise abrogated their separate identities and/or acted in concert and/or are successors in interest." (DE 48 at ¶¶ 13-14). The Motion to Dismiss seeks to dismiss Counts 2 through 10 for failure to state a cause of action and requests the Court to dismiss the complaint. (DE 54 at 6; 18).

Plaintiff alleges that Defendants are law practices operating in Florida except that Sibley Dolman Personal Injury Lawyers, P.A. administratively dissolved on September 29, 2019. (DE 48 at ¶¶ 8-12). As described in the Second Amended Complaint, Plaintiff Paul Ritchie is a law school graduate who in recent years provided free-lance paralegal services to attorneys in South Florida, including, beginning in June 2016, Brent Sibley ("Sibley") of Defendant Sibley Law, P.A. *Id*. at ¶¶ 16-18. The Second Amended Complaint describes how, while Plaintiff continued to work with other lawyers, Plaintiff's employment relationship with, and duties for, Sibley evolved throughout 2017 and 2018. *Id*. at ¶¶ 18-37. Specifically, Plaintiff alleges that, in July 2017, Sibley and Plaintiff entered into an "oral agreement" whereby Plaintiff could "temporarily" continue to work for other attorneys until Sibley Law could "support [Plaintiff] exclusively and for as long as [he] desired," agreeing that "this position and arrangement would become exclusive, full-time and endure indefinitely." *Id*. at ¶ 21.

In April 2018, Sibley merged his law practice with Matthew A. Dolman. *Id*. at ¶ 26. That summer, Sibley told Plaintiff that the combined law firm would open a North Miami Beach office. *Id*. at ¶ 27. Plaintiff alleges that "[c]onsistent with the earlier agreement between Paul Ritchie [and] Sibley, it was agreed that Paul Ritchie would begin to terminate his working relationships with other attorneys and devote all his time and talent exclusively to the Sibley Dolman firm." *Id*. at ¶ 28. In September 2018, Sibley granted Plaintiff a raise, with the parties agreeing that Plaintiff would work out of his home office. *Id*. at ¶¶ 30-31. The Second Amended Complaint then alleges

3

that Plaintiff undertook various efforts between September and November 2018 to "set up the Sibley Dolman office in North Miami Beach at the request of Brent Sibley," including creating an office design, designing a company logo, selecting and installing furniture and equipment, and cleaning out and painting the office. *Id*. at ¶¶ 32-36. Plaintiff alleges that these efforts were "above and beyond the agreed job duties, performed on his own time and, were based on the secure long-term employment relationship promised by Brent Sibley to remain for as long as Paul Ritchie desired." *Id*. at ¶ 37.

Pertinent to Plaintiff's Misappropriation and Unauthorized Use of Likeness claims, Plaintiff alleges that around January 2018, he was instructed to join a "video shoot" for the purpose of creating "footage depicting the top three key people (Sibley, Dolman and Ritchie) of the Sibley Dolman firm engaged in active discussions." *Id*. at ¶ 40. While the Second Amended Complaint admits that Plaintiff consented to video recording, it insists that Plaintiff had no opportunity to review the footage, execute a release for publication, or learn plans for the video's use. *Id*. at ¶¶ 41-43, 120. Shortly before Plaintiff was fired, and continuing thereafter, Defendants published a promotional video including footage of Plaintiff on various internet platforms, which Plaintiff alleges falsely depict him as the firm's adversary. *Id*. at ¶¶ 54-56.

Regarding Plaintiff's age discrimination claims, the Second Amended Complaint alleges that in December 2018, Defendants hired Patrice Altine, age 37; and, in January 2019, Defendants gave him certain operational duties previously handled by Plaintiff (who is over 40). *Id*. at ¶¶ 38-39, 61, 80. In or about January 2019, Defendants hired Michaela J. Sprague, age 45, as a paralegal. *Id.* at ¶ 44. Ms. Sprague assumed duties handling cases previously handled by Plaintiff. *Id.* On March 15, 2019, Sibley "reassured Ritchie that his employment status remained secure and would continue for as long as Ritchie desired," but on March 26, 2019, Sibley notified Plaintiff that he

was fired. *Id.* at ¶¶ 47, 49-50. A video that Defendants published "just after" deciding to terminate Plaintiff's employment contained an audible narrative boasting of a "very young, modern workforce." *Id.* at ¶ 57. Public information indicates that the average age of Defendants' employees is 36.7 years. *Id.* at ¶ 58. The average age of Defendants' non-legal staff is 34.8 years compared to a median age of 42.8 years for paralegals and legal assistants in the United States. *Id.* at ¶ 59. The average age of Defendants' attorneys is 40.5 years compared to a median age of 49 for lawyers in the United States. *Id.* at ¶ 60. On October 21, 2019, Plaintiff sent a letter to Defendants "outlining a number of potential claims arising from his discharge from employment," including a potential claim of age discrimination. *Id.* at ¶ 63. On or about October 29, 2019, Matthew Dolman lodged a complaint against Plaintiff with The Florida Bar, which Plaintiff responded to on or about December 19, 2019, after which The Florida Bar closed the complaint without comment on its merits. *Id.* at ¶¶ 69-70.

## II.   LEGAL STANDARD

### A.   Supplemental Jurisdiction

The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). "In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997). "[Original] [f]ederal-question jurisdiction exists [under 28 U.S.C. § 1331] if the cause of action arises from the Constitution, laws, or treaties of the United States," and "Congress has provided for a private, federal cause of

action for the violation."  McQueary v. Child Support Enf't, 812 F. App'x 911, 913 (11th Cir. 2020) (citing *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 817 (1986)).

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  "The constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim."  *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) (citations omitted).  "In determining if claims derive from a common nucleus of facts, the Court should ask whether the claims arise from the same facts or involve similar occurrences, witnesses, or evidence so that the state law claim falls within the Court's supplemental jurisdiction."  *Nicopior v. Moshi Moshi Palm Grove, LLC*, 375 F. Supp. 3d 1278, 1285 (S.D. Fla. 2019) (citing *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996)).

Furthermore, when within a federal court's power, "supplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."  *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1569 (11th Cir. 1994).  Section 1367(c) permits district courts to decline to exercise supplemental jurisdiction pursuant to section 1367(a) if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).  "[W]hen one or more of these factors is present . . . additional [   ] considerations may, by their presence or absence,

influence the court in its decision concerning the exercise of such discretion.  Such factors include judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together."  *Palmer*, 22 F.3d at 1569 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26 (1966)).

### B.  12(b)(6) Motion to Dismiss

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face."  *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint."  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  In reviewing the complaint, the court must do so in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).  But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading

as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

### III.   ANALYSIS

#### A.   Supplemental Jurisdiction Over State Law Claims - Counts 4 through 9[3]

Turning first to the jurisdictional question, Defendants generally argue that this Court does not have supplemental jurisdiction over any of the state-law claims because Plaintiff has failed to carry his burden to establish that it exists and because the elements, facts and testimony required for the state-law claims are distinct from those necessary to prove age discrimination and retaliation.  (DE 36; DE 56).  Plaintiff suggests, on the other hand, that because all of the claims have to do with his employment and termination of employment with Defendants, the Court has supplemental jurisdiction over the state-law claims.  (DE 59).  Plaintiff's argument that all of the claims relate to his employment pegs the analysis for finding supplemental jurisdiction at too high a level of generality.  That said, looking at the claims, there is sufficient overlap of facts and issues surrounding Plaintiff's alleged employment that are relevant to both the federal age discrimination claims and Plaintiff's state-law claims for the Court to exercise supplement jurisdiction over the state-law claims as further explained below.

Plaintiff's federal age discrimination claims, Counts 1 and 2, and the federal law claim in Count 10 are within the original jurisdiction of the Court because they are brought under federal statute.  28 U.S.C. § 1331.  Plaintiff brings Count 10 citing, in part, the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, which allows an employee a private right of action for unpaid overtime

---

[3] The Court ordered the parties to brief whether the Court has supplemental jurisdiction, under 28 U.S.C. § 1367, over Plaintiff's state-law claims.  (DE 24).  The parties responded.  (DE 28; DE 36; DE 56; DE 59).

worked if the "employer knew or should have known of the overtime work." *Gonzalez v. Batmasian*, 734 F. App'x 677, 679–80 (11th Cir. 2018) (citing *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015)). Courts regularly find a lack of supplemental jurisdiction over state-law claims when original jurisdiction is grounded in a Fair Labor Standards Act claim. *See Maria v. Projekt Prop. Restoration, Inc.*, No. 18-CV-61279, 2019 WL 1116187, at *3 (S.D. Fla. Jan. 23, 2019) (finding that supplemental jurisdiction was lacking over state-law workers' compensation claim because it was not part of the same case or controversy as plaintiff's Fair Labor Standards Act claim and citing other cases holding the same); *Podzemelnyy v. Prolog Corp.*, No. 18-62395-CIV, 2019 WL 2255571, at *3 (S.D. Fla. Mar. 1, 2019), *report and recommendation adopted*, No. 18-62395-CIV, 2019 WL 2253305 (S.D. Fla. Mar. 26, 2019) (finding that trial courts routinely dismiss state-law contract and tort counterclaims where a Fair Labor Standards Act claim is the basis for original jurisdiction). Therefore, in examining the issue of supplemental jurisdiction, I focus on comparing Plaintiff's state-law claims to his federal age discrimination and retaliation claims.

To succeed with his federal age discrimination claim alleged in Count 1, Plaintiff must prove that age was the "but-for" cause of his termination. *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641 (11th Cir. 2018) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). The Count 2 federal retaliation claim requires Plaintiff to show that Defendants filed the complained-of Bar complaint against him, following his objection to Defendants' discharging him on the basis of his age, in order to dissuade Plaintiff from pursuing his charge of age discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse,

which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination") (internal quotation marks and citations omitted).

Facts relevant to Plaintiff's federal claims concerning Plaintiff's employment with Sibley and with Defendants, his performance throughout his employment with Sibley and then the merged firm, the reasons for his firing and whether those reasons are pretextual share relevance with the state-law claims. Accordingly, I find that Plaintiff's state-law claims may be considered as having derived from a common nucleus of facts with the federal law claims as delineated further below.

The state-law claims in Counts 4, 5, and 6 relating to fraudulent misrepresentation, negligent misrepresentation and promissory estoppel concern allegations that Sibley affirmed, on behalf of Defendants, an offer of lifelong employment that Sibley had made prior to his firm's merger with Defendants while knowing that Dolman controlled the hiring and firing decisions. Although I find *infra* that the tort claims in Counts 4 through 6 fail as a matter of law, I nonetheless conclude that the Court has supplemental jurisdiction over these claims. Consideration of Count 1 will necessarily involve examination of why Defendants fired Plaintiff and whether any proffered reason for that termination is pretextual. Thus, Count 1 will likely involve facts and evidence regarding Plaintiff's responsibilities and performance while working for Sibley's practice and how, if at all, those responsibilities and performance changed once Sibley and Dolman's law practices merged. The state-law torts alleged in Counts 4-6 involve similar facts. For example, evidence of the circumstances that led Sibley to allegedly make (and later reaffirm) representations about Plaintiff's job security will likely include evidence of Plaintiff's job performance prior to the merger, while evidence regarding Plaintiff's job performance following the merger could bear on the extent to which Sibley's representations were truthful, fraudulent, or negligent. The same questions of performance and ability would also bear on potential damages Plaintiff incurred by

relying on Sibley's representations.  Moreover, it is apparent that the primary witnesses required for determining Count 1 will be the same witnesses essential for Counts 4-6 – Plaintiff, Sibley, and Dolman.  Thus, I recommend that the Court find supplemental jurisdiction over the Count 4, 5, and 6 claims.

The statutory misappropriation of image and common law unauthorized use of likeness claims in Counts 7 and 8 concern promotional videos in which Plaintiff appears.  The facts leading up to the production of the videos are also facts necessary to the consideration as to why Plaintiff was fired and whether Defendants' proffered reasons are pretextual.  For example, Plaintiff's allegations about what he was told about his importance to the firm (as part of the explanation of the videos' set-up) are also relevant to determining whether he was actually fired for performance or other non-pretextual reasons.  Furthermore, while insufficient standing alone, the allegation that one of the promotional videos allegedly emphasizes an image of youth (while painting Plaintiff as an "outsider") at least makes that video relevant evidence to the age discrimination claim, such that evidence surrounding the creation of those videos is not wholly outside areas that will be explored anyway.  Therefore, I conclude that these claims derive from a common nucleus of operative fact with the federal age discrimination claim and recommend that the Court exercise supplemental jurisdiction over the state-law claims comprising Counts 7 and 8.

The common law restitution claim in Count 9 arises from Plaintiff's efforts in November 2018 to set up Defendants' North Miami Beach office.  Plaintiff's efforts in this regard potentially constitute evidence of  his dedication as an employee and the scope of duties to which he was entrusted – all of which again is potentially relevant to why he was fired and whether any pretext exists.  As such, I conclude that the state-law claims in Count 9 likewise are part of the same case

or controversy as the federal age discrimination claim and recommend that the Court exercise supplemental jurisdiction over the Count 9 claims.

### B. Merits Analysis of all Counts 1 though 10

#### 1. Count 1 – Age Discrimination

Count 1 alleges that Defendants wrongfully terminated Plaintiff in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 to 634. DE 48 at ¶ 1. Defendants present no specific argument for why this count should be dismissed, and, based on my review of the pleadings, I see no grounds for dismissal.[4] "The ADEA prohibits employers from discriminating against an employee who is at least 40 years of age because of that employee's age." *Buchanan*, 727 F. App'x at 641 (citing §§ 623(a)(1), 631(a)). A plaintiff may establish a *prima facie* case of age discrimination by showing that: "(1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged." *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1208 (11th Cir. 2015). The third requirement may be met merely by demonstrating that the plaintiff was replaced by an individual who was several years younger than the plaintiff. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998) (stating that a plaintiff "need not show that a person outside of the plaintiff's [protected] class" replaced the plaintiff). "Although an employment discrimination complaint need not allege facts sufficient to make out a *prima facie* case, it must nonetheless provide enough factual matter to plausibly suggest

---

[4]As discussed *supra*, while Defendants do not specifically include Count I in their Motion to Dismiss, Defendants' prayer for relief generally requests the "entry of an Order Dismissing the Complaint." (DE 54 at 18).

intentional discrimination." *Buchanan*, 727 F. App'x at 641 (citing *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam)).

I find that Plaintiff's pleadings are sufficient to survive a motion to dismiss his age-discrimination claim. Specifically, Plaintiff alleges that: (1) he is 69 years of age and within the protected group at the relevant time; (2) he was terminated; (3) two substantially younger individuals assumed his job responsibilities; and (4) he was qualified based upon consistent compliments he received and bonuses he received based on his performance. (DE 48 at ¶¶ 7, 38-39, 44, 48-50). Plaintiff also contends in the Second Amended Complaint that the reasons Defendants proffered for his discharge were pretextual. After Plaintiff communicated in October 2019 that he was considering potential claims stemming from his discharge, he alleges that he was told that the services he provided were being handled out of Clearwater and that Mr. Dolman preferred to disassociate from Plaintiff because of Plaintiff's previous disbarment from practicing law in another State. (DE 48 at ¶ 64). Plaintiff asserts that these reasons are pretextual because Mr. Altine works in Miami and not Clearwater and because Mr. Dolman knew of Plaintiff's background in early 2018, assisted Plaintiff in pursuing reinstatement to practice law and hired a paralegal with a criminal history to partially assume Plaintiff's duties. *Id.* at ¶¶ 65-66. Plaintiff further alleges that, in close temporal proximity to Plaintiff's termination, Defendants boasted through a published video of a "very young, modern workforce." *Id.* at ¶ 57. Additionally, Plaintiff alleges that Defendants' employees are significantly under the median age of law firm employees in the United States. *Id.* at ¶¶ 58-61.

Because Plaintiff has alleged facts to show that Defendants fabricated a reason for his termination, that Defendants' replacement of Plaintiff with younger workers was consistent with its public promotion of a young workforce, and that Defendants maintain a workforce younger

than applicable median ages nationally, I find that Plaintiff has alleged facts adequate to raise his right to relief under Count 1 above a speculative level in order to survive the Motion to Dismiss.

## 2.  Count 2 – Unlawful Retaliation under the ADEA

Count 2 alleges that Defendants unlawfully retaliated against Plaintiff, in violation of the ADEA.  Specifically, the Second Amended Complaint alleges that Plaintiff engaged in "protected activity" by sending Defendants his October 2019 letter complaining of unlawful employment practices, including age discrimination, and that Defendants unlawfully retaliated against him when Matthew Dolman subsequently lodged a complaint with the Florida Bar alleging that Plaintiff was engaged in the unlicensed practice of law.  (DE 48 at ¶¶ 86-89; DE 57 at 5-6).

To successfully allege a *prima facie* case of retaliation under the ADEA, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).  Defendants' motion concedes that Plaintiff has adequately alleged participation in protected activity and focuses solely on the allegations of "adverse employment action."  (DE 54 at 8).  Specifically, Defendants argue that Matthew Dolman's Bar complaint cannot constitute an "adverse employment action" because it occurred seven months after Plaintiff was terminated.[5]  *Id*.  Defendants also argue that Dolman's Bar complaint is entitled to "absolute privilege."  *Id*. at 8-9.  Additionally, Defendants argue that the federal and state retaliation claims should be dismissed because none of the Defendants made the Bar complaint.  *Id.* at 8.

---

[5] Defendants also argue that, "[c]onsequently, it would follow that Plaintiff has failed to demonstrate that his termination was causally related to the Plaintiff's protected activities of opposing alleged unlawful employment practices."  (DE 54 at 8).  But it is quite apparent from the Complaint that Plaintiff is only alleging Dolman's Bar complaint, not Plaintiff's termination, as the "adverse employment action." (DE 48 at ¶¶ 88-89).

Defendants' first argument – that Dolman's Bar complaint cannot constitute an "adverse employment action" solely because it occurred after Plaintiff's employment ended – is meritless. The Supreme Court has held that the term "employee," as it is used in the retaliation provision of Title VII,[6] includes former employees, and that such former employees may sue an employer for allegedly retaliatory postemployment actions.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).  The statutory language of Title VII's retaliation provision is identical to the retaliation provision in the ADEA, and, therefore, the definition of "employee" should be similarly construed to include "former employee."  *Compare* 42 U.S.C. § 2000e-3(a) *with* 29 U.S.C. § 23(d).[7] Moreover, the Supreme Court has also held that retaliatory "adverse employment actions" are not limited to acts that affect the terms and conditions of one's employment.  *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 63 ("An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace."). *See also Crawford v. Carroll*, 529 F.3d 961, 973-74 (11th Cir. 2008) (recognizing that *Burlington* had broadened actionable "adverse employment actions" beyond those that adversely affect the plaintiff's conditions of employment or employment status).  Rather, under *Burlington*, to satisfy the adverse employment action requirement, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse."  548 U.S. at 68.  In this context, "materially adverse" means "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Id.* (agreeing with the Seventh Circuit's prevailing standard) (internal citations omitted).  Thus, the ADEA's protection of "employees" from retaliation includes protection of former employees "in so far as they are complaining of retaliation

---

[6] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

[7] Defendants appear to concede that courts look to cases interpreting Title VII when interpreting the ADEA.  (DE 61 at 2-3).

that impinges on their future employment prospects or otherwise has a nexus to employment." *Flannery v. Recording Industry Ass'n of Am.*, 354 F.3d 632, 642 (7th Cir. 2004) (quoting *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996)).

Here, Defendants' logic that Dolman's Bar complaint cannot constitute an "adverse employment action" solely because Plaintiff was terminated seven months beforehand is completely at odds with *Robinson* and *Burlington*.  While Plaintiff had already been terminated from his employment with Defendants at the time of the Bar complaint, one can easily see how the Bar complaint would be "materially adverse" – dissuading a reasonable worker from pursuing a charge of discrimination.  In the State of Florida, the unlicensed practice of law may be prosecuted as a third-degree felony, punishable by up to 5 years' in prison and a $5,000 fine. §§ 454.23, 775.082, 775.083, Fla. Stat.  Even beyond fear of such prosecution, a paralegal such as Plaintiff could quite reasonably fear that even being accused of such conduct could negatively affect his prospects for future employment with other lawyers.  Consequently, fear of incurring such accusations could reasonably dissuade someone in Plaintiff's position from pursuing a claim of discrimination.  Therefore, Defendants' first argument that Plaintiff has failed to allege an "adverse employment action" fails.

Defendants' second argument – that Dolman's Bar complaint[8] is entitled to "absolute privilege" – also does not merit dismissal.  Defendants cite to *Tobkin v. Jarboe*, 710 So. 2d 975 (Fla. 1998), and the earlier decision of *Stone v. Rosen*, 348 So. 2d 387 (Fla. 3d DCA 1977), for the proposition that a citizen's complaint to the Bar is entitled to an absolute privilege that shields the

---

[8] Defendants' motion and reply assert facts in an apparent attempt to explain the basis for Dolman's Bar complaint.  (DE 54 at 5, 8; DE 61 at 2-6).  It is unclear whether Defendants do so in an attempt to justify Dolman's Bar complaint or to suggest that the Bar complaint was not "causally related" to Plaintiff's protected conduct.  Regardless, these facts are extraneous to the Second Amended Complaint, and the Court should not consider them in ruling on the Motion to Dismiss. *Wilchombe*, 555 F.3d at 959.

complainant from civil liability based on that complaint.  (DE 54 at 8-9).  *Stone* held that there is "an absolute privilege on the part of a citizen to make a complaint against a member of the integrated bar." 348 So. 2d at 388.  *Tobkin* re-affirmed *Stone*'s holding.  710 So. 2d at 976.  In doing so, they prevented lawyers from bringing causes of action for malicious prosecution and defamation against former clients who had filed Bar complaints against them.

A closer examination of *Tobkin* and *Stone*'s logical underpinnings, however, suggests that such immunity should not necessarily extend to complaints against non-lawyers (as here).   *Stone* made clear that the privilege applied to a citizen complaining about "a member of the integrated bar."  348 So. 2d at 388.  Whereas, here, a member of the bar lodged a complaint against a non-lawyer (indeed, specifically for being a non-lawyer).  Defendants do not cite any cases applying this privilege to complaints about the unlicensed practice of law or other complaints against non-lawyers.  The distinction between complaints against lawyers and non-lawyers is significant because *Stone*, and, by extension, *Tobkin*, predicated their rulings in part on the notion that an accused lawyer has a unique position in two respects.

First, *Stone* noted that:

> Members of the legal profession are accorded rights and privileges not enjoyed by the public at large; the acceptance of these carries with it certain responsibilities and obligations to the general public. For the sake of maintaining the high standards of the profession and disciplining those who violate the Canons of Legal Ethics, one who elects to enjoy the status and benefits as a member of the legal profession must give up certain rights or causes of action which, in this instance, is the right to file an action against a complainant who lodges an unsuccessful complaint with the Grievance Committee of The Florida Bar.

348 So. 2d at 389.  However, non-lawyers have not made this bargain.  Non-lawyers do not enjoy the benefits of being members of the Bar.  By extension, non-lawyers like Plaintiff should not then bear the cost of forfeiting their ability to file suit due to the absolute immunity articulated by *Stone*.

Second, according to *Tobkin*, the privilege is necessitated by a power imbalance between lawyers and non-lawyers:

> We also recognize the inequitable balance of power that may exist between an attorney who brings a defamation action and the client who must defend against it, which in turn creates the potential for attorney intimidation of Bar complainants. Attorneys schooled in the law have the ability to pursue defamation litigation through their own means and with minimal expense when compared with the Bar complainants. Conversely, the cost of litigation coupled with the risk of liability in defending against such an action could be enough to discourage an individual from bringing a meritorious complaint. The mere possibility of chilling valid complaints would undermine public confidence in this Court's ability to regulate and discipline unethical members of The Florida Bar.

710 So. 2d at 977. This power imbalance is reversed here, with an accused non-lawyer filing suit against a complaining lawyer.[9] The need to protect an ordinary, unsavvy client (particularly a client that may have already been taken advantage of by the lawyer about whom they have complained) from a lawsuit is materially different from any need to protect a lawyer like Dolman in the situation presented here.

To be sure, the same desire to effectively police the practice of law by protecting the public from those who practice law without qualification – and the same concern for chilling valid complaints of misconduct – could potentially justify extending the same privilege to those who complain about the unlicensed practice of law. However, because the logic of *Stone* and *Tobkin*

---

[9] *But see Alvarez v. Ridge*, No. 03-20049-CIV, 2004 WL 7331011, (S.D. Fla. Mar. 30, 2004). In *Alvarez*, the court dismissed a claim of intentional infliction of emotional distress brought by one lawyer against another lawyer who had filed a Bar complaint against her. The court found that the privilege described in *Tobkin* applied even in this lawyer-vs-lawyer context, which presumably would not suffer from the same power imbalance as a lawyer-vs-client situation. *Id*. Notably, the court there found that, while not precisely analogous to the lawyer-vs-client facts of *Tobkin*, the additional consideration of a lawyer's ethical obligation to report another lawyer's misconduct further justified applying the privilege. *Id*. at *3 (citing Florida Rule of Professional Conduct 4-8.3). However, that additional consideration is absent in this case, as Rule 4-8.3 only requires a lawyer to report suspected misconduct of <u>another lawyer</u>. *See id*. Therefore, even absent the privilege, Dolman would not have confronted a "Hobson's Choice" in this case of having to either report Plaintiff's alleged misconduct and face a lawsuit or forgo the report and commit potential Bar misconduct himself.

relies heavily on the unique status of lawyers, the privilege they articulated does not extend to lawyers making complaints against non-lawyers, as here.  Defendants' second argument, therefore, fails.

Finally, Defendants argue that, "none of the Defendants in the instant case . . . made the complaint with the Florida Bar; therefore, [the retaliation claims in Counts 2 and 3] should be summarily dismissed."  (DE 54 at 8).  Defendants cite no authority for this proposition. Furthermore, Defendants' argument is meritless because Mr. Dolman's actions are imputed to the Defendants as the employer.  *See Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) (acknowledging that "corporate defendants act only through authorized agents"). Accordingly, the Motion to Dismiss as to Count 2 should be denied.

### 3.  <u>Count 3 – Unlawful Retaliation under Fla. Stat. § 448.102</u>

Count 3 alleges that Plaintiff: (1) "objected to an activity, policy, or practice [that] is in violation of a law, rule, or regulation," and (2) "in writing, brought that activity, policy, or practice to the attention of [his] supervisor or the employer and [   ] afforded the employer a reasonable opportunity to correct the activity, policy, or practice."  (DE 48 at ¶¶ 93-95).  Defendants' Motion to Dismiss argues that Count 3 should be dismissed for the same reasons as it argues that Count 2 should be dismissed.  *See* DE 54 at 7 (discussing consolidated arguments for dismissing Counts 2 and 3).  I do not find it necessary to address the applicability of Defendants' consolidated arguments to Count 3 because I separately conclude that Plaintiff fails to sufficiently plead Count 3 for the reasons that follow.

The Florida Whistleblower's Act ("FWA"), Fla. Stat. § 448.102, provides as follows:

An employer may not take any retaliatory personnel action against an employee because the employee has:

      (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

      (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

      (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

Fla. Stat. § 448.102.

Here, Plaintiff alleges vague and conclusory facts that are merely consistent with liability under the statute, which is insufficient to survive a motion to dismiss. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012). Plaintiff does not specifically identify the violative activity, policy, or practice at issue relative to Count 3. The Court should not have to presume the allegations to which Plaintiff refers. While Plaintiff describes generally in Count 2 that he communicated to Defendants "unlawful employment practices, including age discrimination" (DE 48 at ¶ 86), Count 3 lacks even this much description of the Defendants' conduct that is at issue. Rather, Plaintiff's Count 3 allegation that he "objected to an activity, policy, or practice . . . in violation of a law, rule, or regulation," merely tracks the language of the statute and fails to identify the activity, policy, or practice to which his FWA claim applies. *Id.* at ¶ 94. Furthermore, Plaintiff fails to allege facts to explain how he "afforded the employer a reasonable opportunity to correct the [unspecified] activity, policy, or practice." *Id.* at ¶ 95. Merely alleging that he afforded his employer such opportunity is insufficient. Moreover, under the FWA, "'[r]etaliatory personnel action' means the discharge, suspension, or demotion by an employer of an employee or any other

adverse employment action taken by an employer against an employee in the terms and conditions of employment."  While the Dolman Bar complaint satisfies the broader definition of "adverse employment action" as courts have interpreted that term in federal statutes, the Dolman Bar complaint does not constitute retaliatory personnel action as defined by the Florida statute.  Fla. Stat. § 448.101(5).  Therefore, for all the foregoing reasons, Defendants Motion to Dismiss Count 3 should be granted, and Plaintiff's Count 3 should be dismissed without prejudice for Plaintiff to replead, if he can, allegations that make out a claim for retaliation under Florida law.

### 4.  <u>Counts 4, 5 and 6 – Fraudulent Misrepresentation, Negligent Misrepresentation, and Promissory Estoppel</u>

In Counts 4, 5, and 6, Plaintiff alleges that Brent Sibley, on behalf of Defendant Sibley Law, P.A., induced Plaintiff to "make plans to eventually abandon all other employment by promising secure, life-long employment with Sibley Law, P.A."  (DE 48 at ¶¶ 96; 107; 117). Further, Plaintiff alleges that in 2018 Sibley "failed to inform [him] that a 'merger' with Dolman could result in [his] termination . . . by control of the firm transferring to Matthew Dolman."  *Id.* at ¶¶ 97; 108.  Plaintiff also alleges that he terminated his independent paralegal arrangements in order to be fully available to Defendants in July and August of 2018 because he acted in reliance on Sibley's representations of employment security that Sibley made on behalf of Defendants.  *Id.* at ¶¶ 98; 109; 118.  Defendants argue that, even with Sibley's representations, Plaintiff was "at best, an at-will employee"[10] and thus could not reasonably rely on a notion of job security.

Defendants are correct that the arrangements Plaintiff describes in the Second Amended Complaint amount only to employment at-will.  While Plaintiff characterizes Sibley's promises as guaranteeing "secure lifelong employment," (DE 48 at ¶25), it is clear that the arrangement was

---

[10] Defendants assume Plaintiff was an at-will employee for the sake of arguing this Motion but maintain that Plaintiff was rather a free-lance paralegal for Sibley and a number of different firms, not Defendants' employee.  (DE 54 at 10; n.1)

discretionary and/or indefinite. *See id.* at ¶ 21 (alleging that Plaintiff was offered employment "for as long as [he] desired").  It is well-established under Florida law that, "[w]here the term of employment is discretionary with either party or indefinite, then either party for any reason may terminate it at any time and no action may be maintained for breach of the employment contract." *DeMarco v. Publix Super Mkts., Inc.*, 384 So. 2d 1253, 1254 (Fla. 1980) (quoting *DeMarco v. Publix Super Mkts., Inc.*, 360 So. 2d 134, 136 (Fla. 3d DCA 1978)); *see also Yarcheski v. Keiser School, Inc.*, 508 F. App'x 916, 917 (11th Cir. 2013) (finding under Florida law that an employment contract without a definite duration and without implication of employment for a definite period of time is "at-will").  Under Florida law, even promises of "lifetime employment" are considered indefinite and give rise only to employment at-will, absent extremely rare circumstances not present here.  *See Dewachter v. Scott*, 657 So.2d 962 (Fla. 4th DCA, 1995) (citing *Smith v. Piezo Technology and Professional Administrators*, 427 So.2d 182 (Fla.1983) and *Maguire v. American Family Life Assurance Company of Columbus, Georgia*, 442 So.2d 321 (Fla. 3d DCA 1983)); *Hesston Corp. v. Roche*, 599 So. 2d 148 (Fla. 4th DCA 1992).

Defendants are also correct that, as an at-will employee, Plaintiff's reliance on a promise of employment for an indefinite period of time is unreasonable because it is in contravention of Florida's well-settled employment law tenets.  In *Leonardi v. City of Hollywood*, 715 So. 2d 1007, (Fla. 4th DCA 1998), Florida's Fourth District Court of Appeals considered a promissory estoppel claim brought by plaintiff who, having been offered a job by the City of Hollywood, quit his existing employment only to have the City revoke its offer later that same day.  Because the City's job offer was only for at-will employment, which could be terminated at any time, the *Leonardi* court found that the plaintiff's reliance on that offer was unreasonable.  *Id*. at 1008.  In so holding, the court reasoned that, with at-will employment, the City could have fired Leonardi immediately

after hiring him before any wages had accrued, and Leonardi's prior employer could have similarly fired him at any time.  *Id*.  The Eleventh Circuit has similarly understood *Leonardi* as having "found the plaintiff's reliance on the defendant's offer of at-will employment . . . unreasonable" for purposes of maintaining a claim for promissory estoppel.  *Escarra v. Regions Bank*, 353 F. App'x 401, 403 (11th Cir. 2009) (applying *Leonardi* in the context of a current employee relying on continued at-will employment).

Plaintiff attempts to distinguish *Leonardi* by the fact that there was no offer of lifetime employment or promise of job security in that case, whereas here Plaintiff alleges he was promised "secure, life-long, employment."  (DE 48 at ¶¶ 25-37 and 47; DE 57 at 9; 11-12)).  However, this argument is unavailing because it requires interpreting the allegedly promised arrangement to be something more than employment at-will.  In other words, in order for Plaintiff's situation to be distinguishable from Leonardi's, the promise made to Plaintiff must have entitled Plaintiff to something more than that to which Leonardi was entitled.  But as described above, under Florida law, an arrangement of indefinite (even "as long as you wish") employment still only amounts to employment at-will.  *See Dewachter*, 657 So.2d 962.  Thus, even Sibley's alleged description of employing Plaintiff "as long as he desired" did not entitle Plaintiff to anything more than Leonardi was offered.  By *Leonardi*'s reasoning, Plaintiff could not reasonably rely on the notion that his employment would last his lifetime any more than Leonardi could reasonably rely on his job offer not disappearing immediately after he accepted it.

Plaintiff also cites to several Florida cases relied upon in *Golden v. Complete Holdings*, *Inc*., 818 F. Supp. 1495 (M.D. Fla. 1993), a Middle District of Florida case in which the court allowed claims for fraudulent misrepresentation, negligent misrepresentation, and promissory estoppel to proceed in similar circumstances.   However, *Golden* itself is, at best, persuasive

authority, and none of the Florida cases cited in *Golden* that Plaintiff identifies addressed this precise situation.  Most of the cases Plaintiff notes state the elements of the causes of action he alleges without applying them to an analogous employment context.  One potential exception is *Telesphere Int'l, Inc. v. Scollin,* 489 So. 2d 1152, 1155 (Fla. 3rd DCA 1986), which found that an employer could be found liable of fraudulently inducing an employee to enter into an employment contract, even if the employer was justified in having terminated the employee under that contract.  However, importantly, *Scollin* did not involve at-will employment – rather the plaintiff/employee claimed he was fraudulently induced into a contract that only allowed firing "for cause" where the employer concealed the likelihood that certain circumstances constituting cause would arise.  *See id*.  Thus, *Scollin* does not address the degree to which an individual could rely on a promise of at-will employment.

Moreover, *Golden* was written without the benefit of *Leonardi*, authority which is both controlling and more directly on point.  As a later Middle District of Florida opinion stated, "more recent Florida decisions have cast doubt on the validity of Golden's conclusions."  *Escarra v. AmSouth Bank*, No. 2:07-CV-408, 2009 WL 10670073, at *4 (M.D. Fla. Jan. 28, 2009), *aff'd sub nom. Escarra v. Regions Bank*, 353 F. App'x 401 (11th Cir. 2009).  Again, the Eleventh Circuit's opinion in *Escarra* followed *Leonardi*'s holding that it is unreasonable as a matter of law for an employee to rely on a promise of future at-will employment.  *Id.*  (citing *Leonardi v. City of Hollywood*, 715 So. 2d 1007, 1009) (Fla. 4th DCA 1998).

In summary, given that Plaintiff was an at-will employee, Defendants retained the discretion to terminate Plaintiff despite any promise of lifetime employment.  For this reason, Florida law does not support Plaintiff's reliance on Defendants' promise.  *See Martinez v. Goodwill Indus. of S. Fla., Inc.*, No. 11-60256-CIV, 2011 WL 13217232, at *4 (S.D. Fla. Apr. 1,

2011) (finding that "[p]laintiff's reliance on an alleged promise of continued at-will employment [was] unreasonable, as a matter of law" with respect to a fraudulent misrepresentation claim because an employer retains the right to terminate an at-will employee) (citations omitted). Thus, Plaintiff is unable to allege a necessary element for the subject tort claims—that he reasonably or justifiably relied upon the promises or misrepresentations regarding future at-will employment. Accordingly, Defendants' Motion to Dismiss should be granted as to Counts 4, 5, and 6.

### 5.   <u>Counts 7 and 8 – Statutory Misappropriation of Image and Common Law Unauthorized Use of Likeness</u>

In Count 7, Plaintiff alleges that Defendants misappropriated his image, in violation of § 540.08 of the Florida Statutes, while Count 8 alleges the common law cause of action of unauthorized use of likeness, both based on Defendants' use of footage containing Plaintiff in their promotional videos. The relevant statute states that "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by . . . such person." § 540.08(1)(a). The elements of the common law claim, which is a variant of the tort of invasion of privacy, are substantially identical. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1320 n.1 (11th Cir. 2006).[11]

The Second Amended Complaint alleges that, although Plaintiff consented to being video recorded, he did not consent to the use or publication of the resulting footage. (DE 48 at ¶¶ 40-43). The allegations insist that Plaintiff was not told what the publication plans were for the video footage, was not given an opportunity to review or approve of the footage prior to publication, and

---

[11] In *Almeida*, the Eleventh Circuit analyzed the statutory and common law claims together because they are "substantially similar" and the parties provided minimal briefing on the common law cause of action. Similarly, here, the parties provide little – in fact, no – additional briefing on the common law claim. Therefore, as in *Almeida*, the Court should consider them together.

did not sign any release for publication of the footage including his image and likeness.  *Id*.  The Second Amended Complaint further alleges that the published videos were for trade, commercial, or advertising purposes, in that they were used "in direct promotion of Sibley Dolman law firm for the commercial purpose of selling legal services to new clients."  *Id*. at ¶¶ 55, 123.  Therefore, the Second Amended Complaint alleges the elements of the causes of action.

Defendants nevertheless seek dismissal on two grounds.  First, Defendants argue that Plaintiff consented to making the videos.  (DE 54 at 13).  Second, Defendants assert that "Plaintiff's image and likeness were never associated with a product or service unrelated to that work," apparently arguing that use of Plaintiff's image does not amount to "commercial exploitation."  *Id*. at 14.  Neither argument merits dismissal.

Defendants' consent argument presents an issue of fact regarding the scope of Plaintiff's consent.  While Plaintiff admits that he consented to being video recorded, the Second Amended Complaint alleges that his consent did not encompass publication of the footage.  Defendants equate Plaintiff's admission of "consent[] to be videoed" with "consent[] to use his image and likeness for informational videos" without explaining why.  (DE 54 at 13).  Defendants assert that Plaintiff's objection to not having creative control over the use and editing of their "informational videos" is not valid in the face of his consent.  *Id*.  But whether Defendants' factual assertion regarding Plaintiff's consent is to establish that Plaintiff expressly knew of, and consented to, the use of the recorded footage in a promotional video or to imply that Plaintiff should have known at the time of his consent that it would be used in this manner, Defendants' assertions amount to a factual dispute about the scope of Plaintiff's consent.[12]  The Court cannot resolve this factual

---

[12] Defendants cite *Lane v. MRA Holdings, LLC*, 242 F.Supp.2d 1205 (M.D. Fla. 2002), in the course of their consent argument.  In *Lane*, the court did consider – and ultimately reject – a plaintiff's contention that her consent to be recorded did not include consent for that recording to be viewed by anyone other than the individual cameraman or otherwise widely published.  *Id*. at

dispute at this stage, and Defendants' factual assertions conflicting with the Second Amended Complaint's allegations cannot form the basis of dismissal, because the Court must accept the allegations of the Second Amended Complaint as true and view them in the light most favorable to Plaintiff.

Defendants' second argument is also unavailing.  Defendants essentially argue that use of Plaintiff's image in their promotional videos did not "directly promote a product or service of the publisher," analogizing to *Fuentes v. Mega Media Holdings, Inc*., 721 F.Supp.2d 1255 (S.D. Fla. 2010), and *Lane*, 242 F.Supp.2d at 1213.  However, both of these cases are distinguishable because they involved "expressive" publications, not commercial promotions as at issue here.

The "directly promote" language Defendants quote in their Motion to Dismiss originates from *Valentine v. C.B.S., Inc*., 698 F. 2d 430, 433 (11th Cir. 1983), and is part of analyzing whether use of a person's name or image is "for purposes of trade or for any commercial or advertising purpose," as § 540.08 requires.  The *Valentine* court was distinguishing between use of a person's name or likeness in order to promote some distinct product or service (which violates the statute) from the inclusion of a person's name or likeness in a publication that (even if itself sold for profit) is not promoting some other product or service.  In *Valentine*, the Eleventh Circuit rejected a § 540.08 claim brought by a woman whose name was included in the lyrics of Bob Dylan's ballad "Hurricane" because Dylan's song was not promoting a product or service.  *Id*.  Rather, it was a work of art, even if it was sold for profit.  *Lane*'s discussion of whether the work at issue "directly promotes" a product or service echoed the same distinction by citing Section 47 of the Restatement

---

1220.  However, the court in *Lane* came to that conclusion at the summary judgment stage.  Indeed, the conclusion was based on consideration of a number of facts, including comments made by the plaintiff's companion at the time of the recording that suggested the likely purpose of the recording.  *Id*.  The Court lacks such a comprehensive set of facts to assess at this stage of the instant case.

(Third) of Unfair Competition.  242 F. Supp. 2d at 1213.  The Restatement clearly states that "[t]he names, likeness, and other indicia of a person's identity are used 'for the purposes of trade' . . . if they are used in advertising the user's goods or services . . . [but] does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising incidental to such uses."  Restatement (Third) of Unfair Competition § 47 (1995).

Following this principle, the claims in *Lane* and *Fuentes* failed because the publications at issue were expressive works.  In *Lane*, the plaintiff objected to video footage of her in a "Girls Gone Wild" video that the court described as irrefutably "an expressive work created solely for entertainment purposes."  242 F. Supp. 2d at 1213.  In *Fuentes*, the plaintiff was an author who objected to portions of his copyrighted material being displayed on a television show.  The court rejected his claim because the publication was "a television program intended to entertain and/or inform the public" without any allegation that the plaintiff's name or likeness was used to promote a separate product or service from the show.  721 F. Supp. 2d at 1259.  While the *Lane* and *Fuentes* plaintiffs' images were used in commercials to promote the expressive works they were a part of, these could not form the basis of a § 540.08 claim because their names and likeness were never associated with a product or service unrelated to those works.  *Lane*, 242 F. Supp. 2d at 1213; *Fuentes*, 721 F. Supp. 2d at 1259.

By contrast here, as the Second Amended Complaint alleges, the publications at issue are commercial advertisements for Defendants' law services, clearly falling within the Restatement's definition of "for purposes of trade" by "advertising the user's goods or services."  (DE 48 at ¶ 55); Restatement (Third) of Unfair Competition, *supra*.  They are not expressive works for entertainment or news value meant to be consumed for their own worth.  Rather, they are

promoting a product or service separate from the publications themselves – i.e. Defendants' law services.  Thus, the instant case is more analogous to *Nottage v. American Exp. Co.*, where owners of a condominium building used a photograph of the building's doorman (without his permission) in postcards and other advertisements to promote the sale or rental of the property's units.  *See* 452 So. 2d 1066 (Fla. 3d DCA 1984) (reversing dismissal for failure to state a claim).

While Defendants analogize to *Lane* in claiming that Plaintiff's "image and likeness were never associated with a product or service unrelated to that work," this analogy is clearly inapt.  In *Lane*, that plaintiff was included in an entertainment video and her image was only further used to promote the sale of that video (i.e. no "product or service unrelated to that work").  Here, as alleged, Plaintiff's image and likeness was not being used to promote the videos in which he appears but rather the separate services of Defendants' law firm.  Therefore, Defendants' second argument fails, and their motion should be denied as to Counts 7 and 8.

### 6.  <u>Count 9 – Quantum Meruit and Unjust Enrichment</u>

Count 9 alleges a claim for restitution measured by quantum meruit and unjust enrichment. The claim is based on Plaintiffs' "substantial hours working to set up the North Miami Beach office of Sibley Dolman" at the request of Brent Sibley, which Plaintiff alleges he expended "in reliance" on Defendants' promises of job security.  (DE 48 at ¶¶ 27; 32; 133-135).  Plaintiff specifically alleges that these efforts "entailed countless hours and talent," were "beyond his expected job duties," and, at least in some instances, were "at his own (unreimbursed) expense." *Id*. at ¶¶ 32-37.  Plaintiff also specifically alleges that the efforts were necessary "to make ready for the next quarterly employee meeting."  *Id.* at ¶37.

Defendants present three arguments for dismissal: (1) Plaintiffs improperly aggregated claims for quantum meruit and unjust enrichment together; (2) in the absence of allegations that

Defendants asked Plaintiff to perform the alleged work, Plaintiff must (and has not) alleged facts justifying his failure to bargain for an express contract before performing the work; and (3) Plaintiff cannot seek relief for unjust enrichment because he has also alleged the existence of a contract.  (DE 54 at 14-15).  However, I find that the Court should dismiss Count 9 for a different reason – the Plaintiff has failed to allege facts supporting a necessary element for quantum meruit and unjust enrichment.

Florida courts use the terms "quantum meruit" and "unjust enrichment," as well as other terms, synonymously to mean a "contract implied in law."  *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997).  The elements of these phrases are essentially indistinguishable: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.  *See Hull & Co.*, 834 So. 2d at 907 (describing "quantum meruit" as "contract implied by law" and listing elements); *Duty Free World, Inc. v. Miami Perfume Junction, Inc*., 253 So. 3d 689, 693 (Fla. 3d DCA 2018).[13]

While Plaintiff adequately alleges that he conferred a benefit by making office improvements (thus establishing the first element) at Defendants' request through Mr. Sibley (thus establishing the second element), Plaintiff's allegations fail to establish element (3) (Defendants' acceptance or retention of the benefit).  Indeed, the Second Amended Complaint lacks any allegations indicating that Defendants accepted or retained any of the benefits conferred by

---

[13] Because quantum meruit and unjust enrichment are synonymous, Defendants' argument that they are improperly alleged together in a single count does not merit dismissal.  Although Defendants object that, "Plaintiff aggregated both claims [i.e. quantum meruit and unjust enrichment] together" without properly alleging the distinct legal requirements for each count (DE 54 at 14), Defendants fail to identify what "distinct legal requirements" they refer to, how quantum meruit and unjust enrichment differ, or any legal authority to support this argument.

Plaintiff with one exception – the Defendants' alleged continued use of a company logo Plaintiff designed.  (DE 48 at ¶ 34).  There are no allegations, however, that Defendants ever began using the North Miami Beach office.  Accordingly, Plaintiff's claim should be dismissed without prejudice for Plaintiff to plead, if he can, sufficient facts to establish a cause of action for quantum meruit and/or unjust enrichment.

Because Plaintiff has not adequately pled the third element, it is unnecessary to reach Defendants' argument that Plaintiff needs to justify his failure to bargain for compensation for their work ahead of time.[14]  Additionally, I do not address whether considerations of equity warrant a finding that Defendants should not retain the benefit without paying fair value for it.  *See In re Auto Body Shop Antitrust Litigation*, No. 6:14–md–2557–Orl–31TBS, 2015 WL 4887882, at *12 (M.D. Fla. June 3, 2015); Restatement (Third) of Restitution and Unjust Enrichment § 2(3) (2011).  It is unclear whether the Court can adequately or appropriately address the usually-fact-intensive

---

[14] While unnecessary to address Defendant's second argument – that Plaintiff must justify a failure to bargain before performing the work because he has not alleged that Defendants requested him to do the work – I observe that Plaintiff specifically alleges that Brent Sibley requested that he set up the North Miami Beach office.  (DE 48 at ¶ 32).  It is also not necessary to reach Defendants' third argument – that Plaintiff improperly incorporates allegations of a contract in Count 9.  Nevertheless, I observe that it is true Plaintiff has incorporated all of his general factual allegations, including those regarding employment agreements, into Count 9.  *Id.* at 29.  It is also true that "the law will not imply a contract where an express contract exists concerning the *same subject matter*." *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984) (emphasis added).  However, it is unclear from Plaintiff's allegations whether the alleged contract concerns "the same subject matter" as the efforts for which he seeks restitution.  On one hand, Plaintiff alleges that his efforts to set up the North Miami Beach Office were "above and beyond the agreed job duties [and] performed on his own time," (DE 48 at ¶ 37), suggesting that they were outside of his express employment agreement.  But conversely (and even in the same breath), he alleges that these efforts were "based on the secure long-term employment relationship promised by Brent Sibley" (*id.*) and "in reliance" on that promise.  *Id.* at ¶¶ 133-35.  While Plaintiff is entitled to pursue alternative theories, assuming he can sufficiently allege facts to support each, should the Plaintiff amend his Complaint, he should clarify his allegations to avoid such inconsistencies.  *Cf. JI-EE Industry Co., Ltd. v. Paragon Metals, Inc.*, No. 09–81590–CIV, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010).

question of equity at the motion to dismiss stage.  At any rate, in the event Plaintiff is able to amend

his complaint with sufficient facts to support the third element of his claim, those facts may inform

the analysis of the fourth element.

### 7.  Count 10 – Misclassification of Employee

Finally, in Count 10, the Second Amended Complaint alleges that Defendants misclassified

Plaintiff as an independent contractor rather than an employee.  Although the Motion to Dismiss

fails to demonstrate that Count 10 should be dismissed,[15] I am nevertheless compelled to

recommend dismissal for other reasons.   Count 10, though titled as "Misclassification of

Employee," purports to assert claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

("FLSA") and Florida common law.  In Count 10, Plaintiff seeks the entry of a judgment:

>    a.  Declaring that Paul Ritchie was an employee and not an independent
>        contractor as of a date no later than September 2018 (and as early as
>        March 2017) and continuing through the date of his termination from
>        employment;
>
>    b.  Awarding Plaintiff damages to include, but not limited to, overtime,
>        break time, unpaid employer taxes in amounts to be proven at trial;

---

[15] The Second Amended Complaint alleges that the nature of Plaintiff's employment with
Defendants changed from independent contractor to ("non-exclusive") employee in March 2017
and that Plaintiff became "exclusively" employed by Defendants in September 2018.  (DE 48 at
¶ 139).  The complaint further alleges that

>    it is indisputable that subsequent to September 2018, Sibley Dolman exercised
>    complete control dictating to Paul Ritchie the work to be performed, hours to be
>    worked (full-time regardless of location) and provided the operational systems and
>    equipment to perform the work. All work product was reviewed and supervised by
>    attorney Brent Sibley who exercised the right to direct what [would] be done and
>    how and when it [would] be done. And, after September 2018, Paul Ritchie worked
>    exclusively for only one company - Sibley Dolman.

*Id.* at ¶ 142.  Defendants' motion takes issue with the Complaint's factual allegations and asserts
that Plaintiff never worked for Defendants but continued to work as a subcontractor for Sibley
Law, P.A. through its wind down while a completely new entity – Sibley Dolman – was formed
and took on new cases.  (DE 54 at 3-4).  While the facts may ultimately bear out in Defendants'
favor, the Court cannot resolve such factual disputes at this stage.

    c.   Ordering Sibley Dolman to pay 100% of FICA taxes that weren't withheld originally and interest assessed daily thereon;

    d.   Awarding any unpaid wages when misclassifying Plaintiff as an independent contractor;

    e.   Granting other and further relief deemed just and equitable by this Court.

(DE 48 at 32).

To the extent the claim is brought under the FLSA, Plaintiff has failed to state a claim upon which relief can be granted. "The elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees and/or failure to keep payroll records in accordance with the Act." *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008) (citing 29 U.S.C. §§ 206, 207, and 215(a)(2) and (5)).[16]  *See also Vasquez v. MC Miami Enters., LLC*, No. 1:19-CV-22459, 2019 WL 4855740, at *3 (S.D. Fla. Sept. 12, 2019) ("To survive dismissal, 'a plaintiff must demonstrate that (1) he is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay him minimum or overtime wages.'" (quoting *Freeman v. Key Largo Volunteer Fire and Rescue Dept., Inc.*, 494 F. App'x 940, 942 (11th Cir. 2012))); *Cabrera v. Progressive Behavioral Sci., Inc.*, No. 19-20172-CIV, 2019 WL 3205841, at *2 (S.D. Fla. July 16, 2019) ("To be eligible for FLSA overtime, however, 'an employee must demonstrate (1) an employment relationship, (2) that the employer engaged in interstate commerce, and (3) that the employee worked over forty hours per week but was not paid overtime wages.'" (citation omitted)).

As a threshold matter, to seek relief under the FLSA, Plaintiff "must show that [he was]

---

[16] Some courts have found the pleading requirements to be more stringent than those announced in *Labbe*, noting that *Labbe* was decided before *Iqbal*. *See, e.g.*, *Cooley v. HMR of Ala., Inc.*, 259 F. Supp. 3d 1312, 1319-20 (N.D. Ala. 2017); *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 643-46 (9th Cir. 2014), *as amended* (Jan. 26, 2015).  The Court need not resolve that issue, however, because the Complaint fails to even include the simple allegations required in *Labbe*.

'covered' by statute, either through 'enterprise coverage' or 'individual coverage.'" *Hayes v. Coco Dulce, Inc.*, No. 19-80368-CIV, 2019 WL 7371838, at *2 (S.D. Fla. Aug. 9, 2019) (citing *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011)).  Yet the Second Amended Complaint utterly fails to address either form of coverage.

While the Court need not go further to determine that the Second Amended Complaint fails to state an FLSA claim, it plainly fails to state a claim for additional reasons.  For one, the FLSA does not support a cause of action for "misclassification."  *See Altare v. Vertical Reality MFG, Inc.*, No. 19-CV-21496, 2020 WL 209272, at *2 (S.D. Fla. Jan. 14, 2020) ("The Court agrees that Plaintiff cannot bring a cause of action under the FLSA for misclassification.")  As Judge Gayles observed in *Altare*,

> the FLSA allows two types of claims: claims for unpaid overtime and minimum wage violations. 'The substantive sections of the FLSA, narrowly focusing on minimum wage rates and maximum working hours, bear out its limited purpose.' The FLSA's plain text does not provide a cause of action for misclassification and the Court is not empowered to create one. . . . Accordingly, because claims for misclassification do not exist under the FLSA, the Court shall not read one into the statute.

*Id*. (internal citations omitted).

Moreover, to the extent that Count 10 seeks damages for unpaid overtime or unpaid wages, the Second Amended Complaint does not actually allege that Defendants failed to pay overtime wages owed to Plaintiff nor how Defendants' alleged "misclassification" of Plaintiff as an independent contractor affected the wages to which he was entitled.  Similarly, to the extent the FLSA even permits a cause of action regarding an employer's failure to pay FICA or other taxes, the Second Amended Complaint fails to include any factual allegations related to the payment or non-payment of such taxes.

With respect to the purported Florida common law claim, it is entirely unclear from the

allegations of the Second Amended Complaint the type of claim that Plaintiff is attempting to allege and whether such a claim exists under Florida law.  In *Altare*, Judge Gayles recently dismissed the same type of claim, noting that "Plaintiff's claim for misclassification pursuant to Florida Law (Counts VII and VIII) must also fail, as Plaintiff cites no Florida law in his Complaint that applies to his claim. Plaintiff may, however, replead these claims with citation to pertinent authority, should such authority exist."  *Altare*, 2020 WL 209272, at *3.

Even if such a common law claim exists, to the extent Count 10 seeks to require the payment of FICA taxes, such a claim is preempted by federal law.  *See Umland v. PLANCO Fin. Servs.. Inc*., 542 F.3d 59, 65 (3d Cir. 2008) (finding that claims of unjust enrichment and breach of contract for an employer's misclassification of an employee as an independent contractor were preempted by lRS regulations); *Mann v. Falk*, No. 2:11-CV-14432-KMM, 2012 WL 4896726, at *7 (S.D. Fla. Oct. 15, 2012) ("[C]ourts that have addressed such claims 'have overwhelmingly come down on the side of preemption, regardless of whether the claims at issue are asserted directly under FICA or are framed as state-law claims to recover moneys owed directly to the plaintiffs by the defendant-employers as a result of their failure to pay their share of FICA taxes.'") (citations omitted)); *Switala v. Rosenstiel*, No. 17-CV-21872-RNS, 2017 WL 7792713, at *6 (S.D. Fla. Oct. 3, 2017).  Moreover, once again, the Second Amended Complaint fails to include any factual allegations related to the payment or non-payment of FICA taxes and fails to allege any facts regarding how the alleged misclassification issue impacted the payment or non-payment of such taxes.

For all of the foregoing reasons, Plaintiff has not stated a claim in Count 10 of the Second Amended Complaint as presently drafted.  Therefore, Count 10 should be dismissed.

IV.     **CONCLUSION**

For the foregoing reasons, I respectfully recommend that Defendants' Motion to Dismiss (DE 54) be **GRANTED IN PART** and **DENIED IN PART**.  Specifically, I recommend as follows:

1.  That the Motion to Dismiss be **GRANTED** as to **Counts 3, 4, 5, 6, 9 and 10** for failure to state a claim; and

2.  That the Motion to Dismiss be **DENIED** as to **Counts 1, 2, 7 and 8**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Aileen M. Cannon, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE** and **SUBMITTED** in Fort Lauderdale, Florida, this 10th day of December 2020.

Jared M. Strauss
**United States Magistrate Judge**

Copies furnished via CM/ECF to:

Hon. Aileen M. Cannon
Counsel of record