UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 20-61047-CIV-CANNON/Hunt

**PAUL RITCHIE**,

    Plaintiff,
v.

**MATTHEW A. DOLMAN, P.A.**, **et al**.,

    Defendants.
_____/

### ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

**THIS CAUSE** came before the Court upon Magistrate Judge Jared Strauss' Report and Recommendation ("Report") [ECF No. 71], entered on December 10, 2020.  The Report recommends that Defendants' Motion to Dismiss [ECF No. 54] Plaintiff's Second Amended Complaint [ECF No. 48] be granted as to Counts 3, 4, 5, 6, 9, and 10 and denied as to Counts 1, 2, 7, and 8.  Defendants filed objections to the Report as to all counts except Counts 1, 3 and 10.  The Defendants do not seek to dismiss Count 1 at this stage [ECF No. 73 p. 6 ("The Defendants will be asserting numerous defenses that are appropriate for summary judgment.")].  The Court has carefully reviewed the Report, Defendants' objections, the entire record, and the applicable law.  In light of that review, the Court **ACCEPTS** the Report but offers the following supplementary analysis in response to Defendants' objections.

### I.     Background

The Report contains a detailed factual and procedural background of Plaintiff's allegations and the relevant claims [ECF No. 71, pp. 2-5].  Accordingly, the Court includes here only that which is necessary to frame the discussion as to Defendants' objections.

Plaintiff Ritchie Dolman is a 69-year-old former paralegal who was terminated from his employment at Defendants' law firm in March 2019 [ECF No. 48]. In September 2020, Plaintiff filed a Second Amended Complaint against Defendants, Sibley Dolman Personal Injury Lawyers, LLP and other entities [ECF No. 48], alleging in Count 1 that Defendants wrongfully terminated Plaintiff in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 to 634 [ECF No. 48 ¶ 1]. Defendants do not move to dismiss Count 1.

Count 2 of Plaintiff's Amended Complaint alleges that Defendants unlawfully retaliated against Plaintiff in violation of the ADEA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) [ECF No. 48 ¶¶ 86-92]. Count 3 alleges unlawful retaliation under Fla. Stat. § 448.102 [ECF No. 48 ¶ 93-95]; Counts 4, 5, and 6 allege state law claims for fraudulent misrepresentation (Count 4) [ECF No. 48 ¶¶ 96-106], negligent misrepresentation (Count 5) [ECF No. 48 ¶¶ 107-116], and promissory estoppel (Count 6) [ECF No. 48 ¶¶ 117-119]; Count 7 alleges statutory misappropriation of image under Fla. Stat. § 540.08 [ECF No. 48 ¶¶ 120-126]; Count 8 alleges common law unauthorized use of likeness [ECF No. 48 ¶¶ 127-132]; Count 9 alleges common law restitution measured by *quantum meruit* and unjust enrichment [ECF No. 48 ¶¶ 133-138]; and Count 10 alleges misclassification of employee under 29 U.S.C. § 201, *et seq*. and common law [ECF No. 48 ¶¶ 139-145].

As described in the Second Amended Complaint, Plaintiff started working as a paralegal for attorney Brent Sibley and his firm Sibley Law, P.A. in June 2016, eventually becoming Chief Operations Officer [ECF No. 48 ¶¶ 17, 20]. In October 2018, while Plaintiff still worked for Sibley Law, Brent Sibley merged his firm with attorney Matthew Dolman's practice—forming a combined entity under the Sibley Dolman banner [ECF No. 48 ¶ 26 n.1].[1] Then, in March 2019,

---

[1] Plaintiff sued various entities that comprise the "Sibley Dolman" law firm, including: Matthew A. Dolman, P.A., d/b/a Dolman Law Group, and d/b/a Dolman Law Group Accident Injury

about six months after the merger, the Sibley Dolman firm terminated Plaintiff's employment [ECF No. 48 ¶¶ 46-51].

On October 21, 2020, about seven months after Plaintiff's termination, Plaintiff sent a letter entitled "Settlement Demand" to his former employer outlining a claim of alleged age discrimination under the ADEA, as well as alleged violations of statutory misappropriation of image under Fla. Stat. § 540.08; common law unauthorized use of likeness; restitution measured by *quantum meruit* and unjust enrichment; and misclassification of employee [ECF No. 61-1 (attaching settlement demand letter)].

Plaintiff's settlement demand letter, sent via email to attorneys Brent Sibley and Matthew Dolman, made the following representations and demands: (1) it "outlin[ed] a number of potential claims arising from his discharge from employment" (2) it directed Defendants to preserve evidence relevant to Plaintiff's employment; (3) it attached a draft complaint and explained Plaintiff's view of how the litigation would proceed; (4) it set forth the relevant legal framework for claims under the ADEA and Florida's statutory equivalent, Fla. Stat. § 448.102; and (5) it alerted Defendants to Plaintiff's prior successful representation as a *pro se* defendant in federal court [ECF No. 61-1, pp. 1-3; *see also* Draft Complaint at ECF No. 61-1, pp. 4-20]. As to the settlement demand specifically, Plaintiff wrote as follows, referring to himself and to his wife Raquel (also a former employee of the Sibley Dolman firm):

> [T]he question turns to you as to how this will proceed. Raquel and I are willing to confidentially settle all claims including age discrimination in the amount of $145,000.00 prior to filing a lawsuit or HRC and EEOC complaints. I have been taught from an early point in my legal career to always have a reason for my number. Here it is: One year salary for me ($100,000): One year salary for Raquel

---

Lawyers PA, a Florida For-Profit Corporation; Sibley Dolman Personal Injury Lawyers, LLP, a Florida Limited Partnership; Sibley Dolman Personal Injury Lawyers, a Florida General Partnership; Sibley Law, P.A., a Florida For-Profit Corporation; and Sibley Dolman Personal Injury Lawyers, P.A., a Florida For-Profit Corporation administratively dissolved [ECF No. 48 ¶¶ 8-14].

>   ($30,000) and $15,000 for busting our asses on the North Miami Beach office and general heartache. Funds must be paid within five days of signing a release.
>
>   It's more than reasonable. My question to a jury would be: "How many year's salary should be paid on the promise of lifetime employment?" Oh, there are lot's of questions like that applicable to this case. A jury will not look kindly on what happened to Raquel either. And, her mistreatment is definitely a factor in my bringing my claim.
>
>   This offer expires and is revoked without notice at 5:00 p.m. EST October 30, 2019. You are already familiar with all the facts, so that should be ample time.

[ECF No. 61-1, p. 3].

On October 29, 2019, eight days after Plaintiff sent the foregoing demand letter, and before Plaintiff filed his charge with the Equal Employment Opportunity Commission and the instant lawsuit, Defendant Matthew Dolman lodged a complaint with The Florida Bar against Plaintiff for the unlicensed practice of law [ECF No. 48 ¶¶ 69]. The complaint asserted that Plaintiff was attempting to represent another person, namely his wife Raquel, with respect to legal claims she was asserting against the Defendants [ECF No. 54, p. 8]. Plaintiff responded to the Bar complaint on or about December 19, 2019, after which The Florida Bar closed the complaint without commenting on its merits [ECF No. 48 ¶¶ 69-70]. Defendant Matthew Dolman's complaint to The Florida Bar forms the basis of Plaintiff's claim of retaliation under the ADEA and Title VII in Count 2.

Plaintiff also alleges that, in January 2018, while he was still employed by Defendants, Brent Sibley instructed him to join a video shoot to create footage depicting the "top three key people (Sibley, Dolman and Ritchie) of the Sibley Dolman firm engaged in active discussions" [ECF No. 48 ¶ 40]. Days before Plaintiff was fired in April 2019, the Sibley Dolman firm published a promotional video containing footage of Plaintiff and an audible narrative that the firm employs a "very young, modern workforce" [ECF No. 48 ¶ 57]. Plaintiff maintains that he never consented to the video's publication and that he was falsely depicted in the video as an adversary

4

to the Sibley Dolman firm [ECF No. 48 ¶¶ 54-56]. The publication of the video forms the basis for Plaintiff's claims of statutory misappropriation of image and common law unauthorized use of likeness in Counts 7 and 8.

## II. Standards of Review

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews *de novo* those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed *de novo*, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept the plaintiff's allegations as true and construe them in the light most favorable to the Plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although the plaintiff need only provide "a short and plain statement of the claim [to] show that the pleader is entitled to relief," Fed. R. Civ. P. 8, a mere "formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. Defendants' Objections to Magistrate's Report

#### A. Count 2: Unlawful Retaliation under 29 U.S.C §623(d) and 42 U.S.C. § 2000e-3(a)

The ADEA makes it unlawful for an employer to discriminate against an employee because he has opposed any practice made unlawful by the ADEA, or because the employee has made a charge pursuant to the provisions in the ADEA. 29 U.S.C § 623(d). Likewise, Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation under the ADEA or Title VII, the plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal relationship between the two events. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (outlining the same *prima facie* test for retaliation claims brought under the ADEA or Title VII).

Here, there is no dispute that Plaintiff engaged in statutorily protected expression by opposing an alleged "unlawful employment practice" under the ADEA when he sent a letter outlining his claim of age discrimination to Defendants [ECF No. 54, p. 8 ("Plaintiff correctly asserts that by opposing an alleged unlawful employment practice, he engaged in activity protected under 42 U.S.C. 2000e-3(a)")]. Defendants disagree, however, that the submission of the Bar Complaint qualifies as an "adverse employment action" [ECF No 73, pp. 6-11]. They also argue that "there is no causal connection between the complained of acts and the complaint to the Florida Bar Mr. Dolman was duty bound to make" [ECF No. 54, p. 8].

The Report notes that "one can easily see how the Bar complaint would be "materially adverse" because, under the Supreme Court's decision in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), it might dissuade "a reasonable worker from pursuing a charge of discrimination" [ECF No. 71, p. 16]. *Id.* at 68 (holding that an adverse action under Title VII is one that "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'") (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008) ("Under the holding of *Burlington*, the type of employer conduct considered actionable has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related.").

As support, the Report notes that (1) the fact that the Bar complaint was filed after Plaintiff's employment ended is legally irrelevant under the text of the ADEA's retaliation provision and Supreme Court precedent [ECF No 71, pp. 15-16]; (2) the unlicensed practice of law may be prosecuted as a third-degree felony in Florida, punishable by up to 5 years in prison and a $5,000 fine [ECF No. 71, p. 16]; (3) a paralegal such as Plaintiff reasonably could fear that being accused of such conduct could negatively affect his prospects for future employment with other lawyers [ECF No. 71, p. 16]; and (4) any absolute privilege that applies under Florida law to citizens making bar complaints against lawyers does not necessarily extend to complaints in the other direction—i.e., by lawyers against non-lawyers such as Plaintiff [ECF No. 71, pp. 16-19].

In their objections, Defendants claim that the Report "failed to acknowledge the unlicensed practice of law and failed to meaningfully address the arguments set forth in the Defendants' Reply" [ECF No. 73, p. 6]. According to Defendants, Plaintiff in fact engaged in the unlicensed practice of law by making legal claims for the person he was representing, and that, as a matter of law, reporting such unlicensed practice cannot constitute an adverse employment action

7

[ECF No. 72, p. 10]. A contrary ruling, Defendants add, would "lead to the absurd result of an employer being in the position to either accept being a victim of a crime or face a retaliation lawsuit by the employee if the employer reports the crime" [ECF No. 73, pp. 6-11]. Defendants also claim that the Bar complaint was not causally related to the protected activity because it concerned Plaintiff's unlicensed practice of law alone—not anything concerning Plaintiff's prior employment [ECF No. 73, p. 11].

As the Supreme Court articulated in *Burlington*, the test for retaliation is whether the challenged action was "materially adverse" such that it would dissuade a reasonable worker from "making or supporting a charge of discrimination." 548 U.S. at 68. An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace. *Id*. at 64. Furthermore, the closeness of timing between when an employee engages in statutorily protected expressed and the challenged adverse action can establish a causal connection. *See, e.g.*, *Farley v. Nationwide Mut. Ins. Co*., 197 F.3d 1322, 1337 (11th Cir. 1999) (stating that a plaintiff satisfies the causal element if he provides "sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action"); *Alvarez v. Royal Atl. Developers, Inc*., 610 F.3d 1253, 1268 (11th Cir. 2010) (finding plausible basis for retaliation claim where employer, although legally entitled to fire the employee, terminated the employee's employment one day after she sent an email outlining her claim of discrimination, thereby raising the inference that the stated reasons for termination were pretextual).

Applying these standards here, on a motion to dismiss under Rule 12(b)(6), the pertinent inquiry is whether Plaintiff has stated a plausible claim that Defendant's complaint to the Florida bar for the unlicensed practice of law would have dissuaded a reasonable worker from making or

supporting a charge of discrimination. *Burlington*, 548 U.S. at 68. At this early stage in the proceedings, Plaintiff's allegations clear that modest bar.

Plaintiff alleges that, on October 21, 2019, he sent a settlement demand letter to Sibley Dolman outlining a potential claim for age discrimination based on his termination of employment [ECF No. 48 ¶ 63]. Plaintiff attached a copy of his anticipated complaint; he described what he viewed as his anticipated damages; and he characterized his anticipated litigation strategy and the manner in which a jury would perceive his claims [ECF No. 61-1]. Then, eight days later, Defendants sent a complaint to the Florida Bar accusing Plaintiff of engaging in the unlicensed practice of law—a third-degree felony punishable by up to 5 years' in prison and a $5,000 fine [ECF No. 48 ¶ 69]. FLA. STAT. §§ 454.23, 775.082, 775.083.

On this record, given the close-in-time nature of the Bar complaint vis-à-vis Plaintiff's protected activity, and considering the discussion in the demand letter as to Plaintiff's already drafted lawsuit, Plaintiff has set forth at least a plausible claim that Defendants reported him to the Bar (and subjected him to potential criminal prosecution) in order to dissuade him from proceeding with his announced plan to file a lawsuit against them [ECF No. 48 ¶¶ 69-70]. That is the extent of the Court's determination at this stage. The Court makes no comment as to whether Plaintiff in fact was engaged in the unlicensed practice of law, nor does it resolve the factual dispute concerning Defendants' reasons for reporting him to the Bar [ECF No. 48 ¶ 91]. The Court simply determines that Plaintiff has set forth sufficient allegations to survive a motion to dismiss.

### B. Supplemental Jurisdiction over Counts 4, 5, 6, 7, 8 and 9

A district court is powerless to hear a matter where subject matter jurisdiction is lacking. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). Federal district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article

III of the United States Constitution." 28 U.S.C. § 1367(a). "The constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006). Supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right." *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 172 (1997). Courts may decline to grant supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

The Report determines that the claims arising from Plaintiff's allegations made under the ADEA and Title VII share a common nucleus of facts with Plaintiff's state law claims [ECF No. 71, pp. 8-12]. Specifically, the Report notes that the claims in Counts 4, 5, and 6 relating to fraudulent misrepresentation, negligent representation, and promissory estoppel involve factual questions about the scope of Plaintiff's job duties and whether the proffered reason for Defendants' decision to terminate Plaintiff's employment was pretextual [ECF No. 71, p. 10]. In these three counts, Plaintiff alleges that Defendants promised him "lifetime employment" causing him to forgo other business opportunities, only to later be fired from the newly merged firm [ECF No. 48 ¶¶ 96-119].

In their objections, Defendants argue that the Court should not exercise supplemental jurisdiction of Counts 4, 5, and 6 because "the only common fact underlying these causes of action is proof that Plaintiff was employed by the Defendants" [ECF No. 73, p. 3]. Defendants further contend that the Report should have focused on the facts surrounding the termination of Plaintiff's

contract with Defendants instead of examining the promises of lifetime employment at the beginning of the business relationship [ECF No. 73, p. 4].

The Eleventh Circuit has held that when determining whether a state law claim forms part of the same case or controversy as a federal claim, courts look to whether the claims "arise from the same facts, or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996) (citing *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1566 (11th Cir. 1994)). Here, as the Report indicates, the factual allegations raised in Counts 4, 5, and 6 about whether Plaintiff was promised "lifetime employment" potentially constitute evidence to evaluate the age discrimination claims in Counts 1 and 2 [ECF No. 48 ¶¶ 96-119]. Specifically, the basis for Plaintiff's employment with Brent Sibley, and the later-merged firm of Sibley Dolman, involve a factual inquiry into Plaintiff's job performance and whether his termination was based on pretext [ECF No. 71, pp. 10-11]. Additionally, the witnesses that will be relied on to prove these claims are identical, or at least nearly identical, to the ones for the federal claims [ECF No. 48 ¶¶ 99-101]. Although the Court adopts the Report's recommendation to dismiss Counts 4, 5, and 6, the Court nonetheless agrees it has supplemental jurisdiction to hear these claims.

The Report also recommends that the Court exercise supplemental jurisdiction over the claims in Counts 7 and 8, relating to statutory misappropriation of image and common law unauthorized use of likeness [ECF No. 71, p. 11]. Plaintiff alleged that he was instructed by Brent Sibley to be filmed for a video, but he never consented to its publication and ultimately believed that it portrayed him in a negative light [ECF No. 48 ¶¶ 120-132]. The Report notes that allegations concerning Plaintiff's involvement and consent to publication of his image are relevant to assess whether Plaintiff's termination of employment was pretextual [ECF No. 71, p. 11]. Specifically, the Report cites factual questions about the videos' alleged emphasis on employing a "very young,

modern workforce" [ECF No. 48 ¶ 57], as relevant to Plaintiff's federal claims under the ADEA and also as contextual background to other allegations in the Complaint [ECF No. 73, p. 11].

Defendants assert that whether Plaintiff consented to be shown in a video has no bearing on whether he was terminated because of his age, and that these claims do not share a common nucleus of operative facts with Plaintiff's Federal claims [ECF No. 73, p. 4]. Although the connection between these events is potentially attenuated, the Court agrees with the Report that the allegations in Counts 7 and 8 share sufficiently similar facts, witnesses and evidence relevant to Plaintiff's federal claims of discrimination and retaliation in Counts 1 and 2. *Hudson*, 90 F.3d at 455. The representations allegedly made to Plaintiff about his importance to be depicted among the "top three key people" in the firm [ECF No. 48 ¶ 40], may involve issues relevant to the age discrimination claim including his job duties, work performance, and standing in the firm. Accordingly, considering principles of economy, convenience, fairness, and comity, the Court exercises supplemental jurisdiction over Counts 7 and 8. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[T]he doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.").

The Report also recommends the exercise supplemental jurisdiction over the claims in Count 9 relating to restitution measured by *quantum meruit* and unjust enrichment [ECF No. 71, pp. 11-12]. Plaintiff alleges in that count that, in reliance on Brent Sibley's alleged representations of "lifetime employment" as referenced in Counts 4, 5, and 6, he spent considerable effort setting up a North Miami Beach office for Defendants [ECF No. 48 ¶¶ 133-138]. The Report notes that this claim involves factual questions about Plaintiff's duties and responsibilities, the nature of his relationship with Defendants, whether his job performance in carrying out his duties was the basis for his termination of employment, and whether any pretext exists [ECF No. 71, p. 11-12].

Defendants nominally raise an objection to the Court's exercise of supplemental jurisdiction over Count 9, but mainly focus their argument on the Report's recommendation to dismiss the Count (and potentially amend the complaint) [ECF No. 73, p. 13]. To the extent Defendants dispute the Report's conclusion as to supplemental jurisdiction on Count 9, the Court disagrees for the same reason stated above—flexibly understood, there are enough similar facts, evidence, and witnesses to permit the exercise of supplemental jurisdiction. Plaintiff's allegation that he was terminated because of age sufficiently overlaps with evidence related to the scope of his duties at the firm and the nature of his relationship to the firm [ECF No. 48 ¶¶ 133-138].

## IV. Conclusion

Following a *de novo* review of the Report's legal conclusions and of the portions of the Report to which an objection has been made, the Court hereby **ACCEPTS** the Report as follows:

1. Defendant's Motion to Dismiss is **GRANTED** as to Counts 3, 4, 5, 6, 9 and 10 for failure to state a claim and **DENIED** as to Counts 2, 7 and 8.[2]

   **DONE AND ORDERED** in Fort Pierce, Florida, this 19th day of February 2021.

   _____
   **AILEEN M. CANNON**
   **UNITED STATES DISTRICT JUDGE**

cc: counsel of record.

---

[2] As noted, Defendant does not seek dismissal of Count 1.